IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**Isabel M. Mihalich**, as Personal
Representative of the **Estate of
Michael Amador Sanchez**,
Deceased, **Sandra A. Twaroski**,
an individual, and **Julio Sanchez**,
an individual,

       Plaintiff,

  v.

**City of Eugene**, a municipal
corporation, **Chriss Skinner,** in his
official capacity as Chief of Police
with Eugene Police Department,
**Carlos M. Jones**, in his individual
capacity, **Jessica D. Dalton,** in her
individual capacity, **David F. Clark**,
in his individual capacity, and **Tyler
L. Tremain**, in his individual capacity,
**Matthew D. Twite**, in his individual capacity

       Defendants.

Case No. 6:21-CV-00142-MC

OPINION AND ORDER

**MCSHANE, Judge:**

      On the morning of January 30, 2019, Officer Carlos Jones took Michael Sanchez into custody. While Officer Jones drove Mr. Sanchez to the hospital, a backseat seatbelt became entangled around Mr. Sanchez's neck. At some point during the drive, Mr. Sanchez asphyxiated.

1 – OPINION AND ORDER

The parties agree that when Officer Jones arrived at the hospital, Mr. Sanchez was unconscious. Mr. Sanchez never regained consciousness and died several months later.

Plaintiffs filed this action against Officer Jones, the City of Eugene, and several other police officers. In response to Defendants' motions for Summary Judgment, the Plaintiffs conceded all but two of their federal claims.[1] The Plaintiffs maintain a 42 U.S.C. § 1983 Fourth Amendment claim for denial of post-arrest medical care against Officer Jones, and an Americans with Disabilities Act ("ADA") claim against the City of Eugene. In response to summary judgment, the Plaintiffs abruptly shifted the theory of their claims from one sounding in negligence to one alleging Office Jones intentionally left Mr. Sanchez to asphyxiate in the back seat of the police car. Caught unaware, the Defendants claim that they have been prejudiced by the Plaintiffs' fourth quarter substitution. But even when viewed in the light most favorable to Plaintiffs, the evidence does not create a genuine issue of material fact as to whether Officer Jones ever saw the seat belt wrapped around Mr. Sanchez's neck. Defendants' Motion for Summary Judgment is GRANTED.

## BACKGROUND

Michael Sanchez was arrested by the Eugene Police in the early morning hours of January 30, 2019. Miller Decl. Ex. 1 at 21, ECF No.58. Police were called to respond to a "trash bin fire" started by Mr. Sanchez. Dalton Decl. Ex. 1 at 1, ECF No. 65. Mr. Sanchez initially fled from the fire and ran, while holding a garbage can lid, into the center of a highway. *Id.* Mr. After ignoring officer commands to get on the ground, Mr. Sanchez eventually complied. *Id.* Once handcuffed, officers physically picked Mr. Sanchez up after "he refused to stand on his own." *Id.*

---

[1] Defendants did not move for summary judgment on Plaintiffs' wrongful death claim under Or. Rev. St. § 30.260 against the City of Eugene.

2 – OPINION AND ORDER

Mr. Sanchez's jacket was singed and he had blood on his face. *Id.* After a half-hearted attempt to walk away, Mr. Sanchez "dropped his body weight, going limp, and refused to get into the rear of the patrol vehicle for transport. While on the ground outside the car, Sanchez started to bang his head against the ground and [an officer] had to grab his hair to prevent him from continuing." *Id.* When Mr. Sanchez resisted being placed in the rear of the police vehicle, the officers placed Mr. Sanchez into a Flexible Restraint Device and secured him inside the vehicle. Jones Decl. Ex. 1, at 2, ECF No. 84.

Once Mr. Sanchez was secured, the officers collected Mr. Sanchez's belongings. Miller Decl. Ex. 2, at 10:40–12:30. At the same time, Mr. Sanchez turned himself upside down in the back seat—Mr. Sanchez's head was in the wheel well and his legs in the air. Miller Decl. Ex. 4, at 2:49–3:30. Sergeant Dalton instructed Officer Jones to transport Mr. Sanchez to the hospital. Miller Decl. Ex. 2, at 12:44–13:07. Officer Jones promptly drove Mr. Sanchez to the hospital, followed by Officer Clark and Officer Tremain. Miller Decl. Ex. 4 at 3:50.

The drive to the hospital took approximately 7 minutes and 33 seconds, during which time Mr. Sanchez asphyxiated in the back seat. *Id.* at 4:40–6:10. The drive began with Mr. Sanchez still in handcuffs and still upside down with his head in the wheel well. *Id.* Mr. Sanchez then tumbled multiple times in the backseat of the police car. *Id.*

Approximately 90 seconds into the drive, Mr. Sanchez went limp and quiet. *Id.* During these 90 seconds, Officer Jones was actively driving the vehicle. *Id.* At times, Officer Jones was able to see Mr. Sanchez via the rear facing camera, which was displayed on a monitor. Miller Decl. Ex. 1 at 9. Officer Jones briefly viewed the monitor and saw Mr. Sanchez's feet up in the air. *Id.* at 21. Officer Jones asked Mr. Sanchez to put his feet down, fearing that Mr. Sanchez was going to attempt to kick the partition in the car. *Id.* Additionally, Officer Jones attempted to

3 – OPINION AND ORDER

comfort Mr. Sanchez by telling him that they were headed to the hospital and informing Mr. Sanchez that he was being recorded. *Id.*; Miller Decl. Ex. 4, at 5:45-6:36. Officer Jones did not drive as if there was an emergency. Rather, he drove at a normal rate of speed, his emergency lights were not on, and he stopped two times for traffic lights. *Id.* at 3:49-12:09.

Once at the hospital, Officer Jones met with the emergency room nurse Ms. Anne Hall. Miller Decl. Ex. 2, at 4. While Officer Jones spoke with Nurse Hall, Officer Tremain checked on Mr. Sanchez. Tremain Decl. Ex.1, at 1. Officer Tremain opened the rear door of the police car to discover Mr. Sanchez lying face first in the seat with his knees curled into his chest. Miller Decl. Ex. 4, at 12:32-57. Officer Tremain called out to Mr. Sanchez several times, receiving no reply. *Id.* Officer Tremain alerted Officer Jones and Nurse Hall of Mr. Sanchez's condition. *Id.* Nurse Hall came over to examine Mr. Sanchez. *Id.* at 13:00-05 Approximately nine to eleven seconds elapsed before Nurse Hall noticed the seatbelt around Mr. Sanchez's neck. *Id.* at 13:55-14:06. Nurse Hall yelled out that the seatbelt was around Mr. Sanchez's neck and attempted, without success, to cut the seatbelt off with trauma shears. Id. at 14:06-53. Officer Jones gently pushed Nurse Hall out of the way and removed the seatbelt with his seatbelt cutter. *Id.*

Immediately after the seatbelt was removed, Officer Clark, on the other side of the car, removed Mr. Sanchez's handcuffs. *Id.* at 14:53-15:10. The officers carried Mr. Sanchez into the hospital for treatment. *Id.* at 15:10-25. Unfortunately, Mr. Sanchez arrived in a coma and, after 241 days of hospitalization, passed away. Pls.' FAC ¶ 60.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v.*

4 – OPINION AND ORDER

*Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ. P. 56(e)). The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. 242, 247–48. Rather, the non-moving party must proffer evidence that could reasonably affect the outcome of the suit. *Miller*, 454 F.3d at 988.

## DISCUSSION

As noted, in their Response to Summary Judgment, the Plaintiffs changed their theory from one sounding in negligence (as alleged in the FAC), to one asserting that Officer Jones was not only aware of the seatbelt wrapped around Mr. Sanchez's neck, but that he consciously chose to do nothing about it. "Simply put, summary judgement is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (*quoting Fleming v. Ling-Waldock & Co.*, 992 F.2d 20, 24 (1st Cir. 1990). When issues outside the scope of the complaint are first raised in opposition to summary judgment, the issues should be construed as a Fed. R. Civ. P. 15(b) request to amend. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). "Leave to amend 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and this policy is to be applied with extreme

liberality." *Id.* (*quoting Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 2004)).

In considering whether to allow an amendment, the Court considers five-factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff previously amended the complaint. *Id.* Here, the Court quickly disposes of the first, second, and fifth factors. The Court sees no evidence of bad faith or evidence that the Plaintiffs are attempting to cause an undue delay. And one previously amended complaint does not tip the scale in either direction. However, the third and fourth factors cut in favor of the Defendants.

With respect to the third factor; i.e., prejudice to the opposing party, "[t]he critical question is whether a plaintiff's new theory exceeds the complaint's scope and the limits of discovery such that defendants could not fairly anticipate it." *Wormuth v. Lammersville Union Sch. Dist.*, 305 F.Supp.3d 1108, 1118 (E.D. Cal. 2018). If so, "the court should not consider the new theory." *Id.* (*citing Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1292 (9th Cir. 2000)).

Plaintiffs argue the Defendants were on notice of the allegation that Officer Jones acted intentionally. They rely on paragraph 83 of the FAC, which states, Officer "Jones . . . acted willfully, deliberately, maliciously or with reckless disregard of whether their actions would violate Mr. Sanchez's constitutional rights." FAC ¶ 83. This language, however, amounts to nothing more than boiler plate language and a legal conclusion, not specific factual allegations. It is confined to the demand for punitive damages within paragraphs 83 and 106. The Court is unpersuaded by Plaintiffs' argument that paragraph 83 gave the Defendants sufficient notice of any theory that Officer Jones saw the seatbelt and deliberately chose to render no aid.

Additionally, the FAC's specific factual allegations confirm Plaintiffs' original theory that the officers first noticed the seatbelt *after* arriving at the hospital. For example, the Plaintiffs specifically allege that "at the nurse's instruction, the officer's [sic] removed Mr. Sanchez's restraints and cut the seatbelt from Mr. Sanchez's neck. *In doing so, they saw that the seatbelt was wrapped around Mr. Sanchez's neck twice.*" FAC ¶ 58 (emphasis added). The FAC alleges Officer Jones knew Mr. Sanchez "was in need of immediate medical care" during the drive not because he actually saw the seatbelt wrapped around Mr. Sanchez's neck, but rather because "Mr. Sanchez stopped moving and became quiet and [] did not respond to Jones' attempts to communicate with him." FAC ¶ 53. Far from alleging Officer Jones knew of any emergency, Plaintiffs instead allege Officer Jones never stopped to "check on [Mr. Sanchez's] well-being" and "[a]t no time . . . did Jones drive emergently to the hospital." FAC ¶¶ 53-54. Finally, upon arriving at the hospital, and before checking on Mr. Sanchez, Officer Jones spent several minutes speaking with a nurse. FAC ¶ 57. The FAC's allegations clearly sound in negligence and support the position that—much like the Court—the Defendants were not on notice of any theory that Officer Jones intentionally allowed Mr. Sanchez to asphyxiate. Only now—in opposition to summary judgment—do the Plaintiffs argue Officer Jones "actually saw the seat belt wrapped around Mr. Sanchez's neck and chose to simply keep diving to the hospital."[2] Pls.' Resp. to Defs,' Mot. Summ. J. at 9.

---

[2] Similarly, in the ADA claim Plaintiffs alleged the City of Eugene "failed to reasonably accommodate Mr. Sanchez's disability in the course of investigation and arrest, causing him greater injury and indignity in that process than other arrestees." FAC ¶ 98. Now, the Plaintiffs argue "Defendant Carlos Jones failed to reasonably accommodate Michael Sanchez's disability by failing to summon an ambulance despite his awareness that Mr. Sanchez, while in the throes of a mental health crisis, had gotten a seat belt wrapped around his neck." Pls.' Resp. to Defs,' Mot. Summ. J. at 14. As discussed below, for both claims at issue here, Plaintiffs must demonstrate not that Officer Jones *should* have seen the seatbelt during the drive to the hospital, but rather that he saw the seatbelt, realized it posed a risk to Mr. Sanchez, and chose to ignore that risk.

7 – OPINION AND ORDER

Plaintiffs' new theory is unlike the new theory in *Wormuth*. There, despite pleading an equal protection claim based on disability discrimination, plaintiff responded to summary judgment by raising theories of gender discrimination and a state created danger violating plaintiff's substantive due process rights. Wormuth, 305 F. Supp. 3d at 1118. The court concluded the new theory was not prejudicial because "the crux of plaintiff's lawsuit is that defendants . . . failed to protect plaintiff from being bullied." *Wormuth*, 305 F.Supp.3d at 1121. In contrast, the Plaintiffs' new theory here does not fall into "the crux of [their] lawsuit." As noted, the theory has shifted from one alleging Officer Jones should have noticed something was wrong, to one alleging Officer Jones knew Mr. Sanchez was choking and chose to do nothing.

Regardless of any prejudice from the proposed amendment, however, "[f]utility alone can justify the denial of a motion for leave to amend." *Nunez v. Ashcroft*, 375 F.3d 805, 808 (9th 2004). "[F]utile amendments should not be permitted." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983). Plaintiffs' new theory is futile.

As Plaintiffs appear to have realized at the summary judgment stage, to prevail on their deliberate indifference claim, they must establish Officer Jones knew of Mr. Sanchez's serious medical need. Plaintiffs now realize that an "inadvertent or negligent failure to provide adequate medical care alone does not state a claim under § 1983."[3] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988)). Assuming the truth of Plaintiffs' new theory—that Officer Jones deliberately chose to let Mr. Sanchez asphyxiate—Officer Jones' leisurely inaction would almost certainly be objectionably

---

[3] Likewise, to prevail on their ADA claim, Plaintiffs must show Officer Jones intentionally discriminated against Mr. Sanchez. *Duval v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139. Therefore, the ADA claim also requires Plaintiffs to demonstrate Officer Jones saw the seatbelt wrapped around Mr. Sanchez's neck and chose to do nothing.

8 – OPINION AND ORDER

unreasonable. What matters for this analysis, however, is if there is evidence which would permit a jury to find that Officer Jones actually saw the seatbelt wrapped around Mr. Sanchez's neck—not merely that he should or could have.

On this record, there is no evidence from which a jury could find Officer Jones saw the seatbelt. The first piece of evidence is Officer Jones's deposition. Officer Jones clearly states that he had no knowledge of the seatbelt wrapped around Mr. Sanchez's neck during the drive to the hospital. Hamilton Decl. Ex. 4, 8; ECF No. 86-4. Officer Jones also testified that the placement of the rear-facing camera "significantly limited" his ability to see not only the monitor, but to turn around and attempt to view Mr. Sanchez directly.[4] *Id.* Admittedly, this deposition is self-serving, but it is admissible evidence and shifts the burden to Plaintiffs to introduce evidence creating a genuine dispute of material fact. Plaintiffs argue the monitor showing the rear-facing video in Officer Jones's police car does just that. The Court disagrees. The video provides very little insight into what Officer Jones knew or saw. Plaintiffs now argue that because the seatbelt is visible on screen for approximately 14-to-16 non-consecutive seconds—while Officer Jones was operating a vehicle—one can infer he saw the seat belt on the monitor wrapped around Mr. Sanchez's neck.

The rear facing video does not create a genuine issue of material fact because it merely allows a jury to speculate about what Officer Jones could have seen. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

---

[4] Perhaps because the parties proceeded on the theory that Officer Jones *should* have seen the seatbelt during the drive, there is a conspicuous lack of evidence regarding the view someone similar in size to Officer Jones would have had during the drive to the hospital. For instance, there is no expert analysis, or even a single picture, demonstrating how much of the monitor, if any, Officer Jones could have seen while keeping his eyes on the road ahead of him. The Court suspects the record on this issue would be more robust had the parties proceeded on the theory that Officer Jones saw the seatbelt and deliberately chose to do nothing. Additionally, there likely would be more evidence regarding Officer Jones's fitness and character; i.e., was there anything his supervisors should have seen that would have alerted them to the fact that Officer Jones may deliberately allow someone to die in custody.

9 – OPINION AND ORDER

evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Additionally, the video supports the conclusion that Officer Jones *did not* see the seatbelt wrapped around Mr. Sanchez's neck. The video demonstrates Officer Jones drove Mr. Sanchez to the hospital in a normal fashion; certainly not in a fashion consistent with knowledge that Mr. Sanchez was asphyxiating in the back seat. Officer Jones was not speeding or driving with any sense of urgency. He did not activate the overhead lights and he stopped for traffic lights. The video evidence demonstrates that upon arriving at the hospital, Officer Jones did not examine Mr. Sanchez or rush to get hospital staff to assist in the medical emergency. Instead, the video shows Officer Jones slowly walking from his vehicle and casually speak with Nurse Hall for some time. The video establishes that once Nurse Hall alerted the officers that a seatbelt was wrapped around Mr. Sanchez's neck—something she determined only after examining Mr. Sanchez for about ten seconds—the officers snapped into action and moved with unmistakable urgency to remove the seatbelt and carry Mr. Sanchez into the hospital.

As discussed above, Plaintiffs' new theory requires a jury to speculate that Officer Jones saw the seatbelt wrapped around Mr. Sanchez's neck and chose to do nothing. Taking this new theory further, not only did Officer Jones choose not to pull over, he also chose to deliberately add several minutes of drive time to the hospital and, once there, spend several minutes speaking with hospital staff, ostensibly allowing more time for Mr. Sanchez to asphyxiate. Stated differently, Plaintiffs' new theory essentially requires a jury to find that Officer Jones is a sociopath.

While a frame-by-frame review of the video evidence shows, in forensic hindsight, that moments existed in which it may have been possible to see the seat belt, there is no evidence here that Officer Jones did so. What Officer Jones could have seen, on this record, does not

10 – OPINION AND ORDER

create a genuine question as to what Officer Jones did see. Instead, the evidence demonstrates that Officer Jones was multitasking: actively driving a police car, communicating with Mr. Sanchez to try to calm him down, occasionally trying to turn his head to get a better look at Mr. Sanchez. That he did not happen to glance at the monitor during one of those few seconds depicted on the video is unfortunate. But it does not rise to the intentional conduct now alleged by Plaintiffs.

## CONCLUSION

Defendants' Motions for Summary Judgment, ECF No. 57 & 83, are GRANTED with respect to Plaintiffs' Federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state claim for wrongful death. 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED.

DATED this 7th day of December, 2023.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge